## 27746. SOUTHERN RAILWAY COMPANY *et al.*
## *v.* PARKMAN.

DECIDED NOVEMBER 13, 1939.

*R. M. Arnold,* for plaintiff in error.

*W. R. Flournoy, Battle & Smith, Hunt C. Maxwell,* contra.

SUTTON, J. █ The plaintiff was injured at a place on the railway tracks where he had no right to be. He was not injured at a public crossing, and was a trespasser, even though it is alleged that the defendants were aware of the fact that people crossed "Railroad Avenue" at the point where the plaintiff sustained his injury and that this was done without their disapproval. "The mere fact that the public may have been accustomed to travel on foot along a certain portion of the right of way of a railway company, and that no measures have been taken to prevent it, does not of itself operate to constitute a person so using the track a licensee of the company; and in the absence of the company's permission for such use, such unauthorized custom does not change the relation of one so using the property of the railway company from that of a trespasser." *Hammontree* v. *Southern Railway Co.,* 45 *Ga. App.* 728 (165 S. E. 913) ; *Southern Railway Co.* v. *Barfield,* 112 *Ga.* 181 (37 S. E. 386). In fact, it is conceded by counsel for the plaintiff that at the time and place of the injury the plaintiff was a trespasser. What is the duty of the defendants towards a trespasser? "Ordinarily the only duty owing by a railway company to a trespasser upon or about its property is not to wantonly or wilfully injure him after his presence has been discovered." *Hammontree* v. *Southern Railway Co.,* supra; *Young* v. *South Georgia Railway Co.,* 34 *Ga. App.* 537 (130 S. E.

542); *Central of Georgia Ry. Co.* v. *Stamps,* 48 *Ga. App.* 309 (3) (172 S. E. 806); *Ashworth* v. *Southern Ry. Co.,* 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592). "Where a number of persons habitually, with the knowledge and without the disapproval of a railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of this custom, are bound, on a given occasion, to anticipate that persons may be upon the track at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence." *Bullard* v. *Southern Railway Co.,* 116 *Ga.* 644 (43 S. E. 39); *Ashworth* v. *Southern Railway Co.,* supra; *Western & Atlantic R. Co.* v. *Michael,* 175 *Ga.* 1, 10 (165 S. E. 37).

Wilful and wanton misconduct is not alleged against the defendants, and "The mere failure of the employees of a railway company to discover the presence of a trespasser at a place where and a time when it was their duty to anticipate the presence of trespassers, and thereafter to take such needful and proper measures for his protection as ordinary care might require, might amount to a lack of ordinary care on the part of the railway company, but would not, in and of itself, amount to wilful and wanton misconduct." *Hammontree* v. *Southern Railway Co.,* supra; *Lowe* v. *Payne,* 156 *Ga.* 312 (118 S. E. 924). The duty of the railway company to discover the presence of one upon its right of way, when it may reasonably be anticipated that persons may be present thereon, does not relieve him of the duty to exercise ordinary care for his own safety. *Southern Railway Co.* v. *Slaton,* 41 *Ga. App.* 759 (2) (154 S. E. 718); *Leverette* v. *Louisville & Nashville Railroad Co.,* 38 *Ga. App.* 155 (142 S. E. 905); *Atlantic Coast Line R. Co.* v. *Fulford,* 159 *Ga.* 812 (5) (127 S. E. 274). "The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other is existing, and is either apparent, or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence." *Western & Atlantic Railroad Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802), and many others. It is, of course, well settled that one can not recover for the negligence of another if by the exercise of ordinary

care and diligence he could have avoided the consequences to himself of such other person's negligence. There is also of force in this State a rule of comparative negligence, under which if both parties are at fault, with respect to the injury sustained by the plaintiff, and the latter could not by the exercise of ordinary care and diligence have avoided the consequences to himself of the other's negligence, then notwithstanding that he may have been negligent he would be entitled to recover if his negligence was less than that of the other party, but the amount of damages shall· be diminished in proportion to the amount of fault attributable to him. "Questions of negligence, proximate cause, and failure to exercise ordinary care to avoid the consequences of another's negligence are questions of fact which are ordinarily for determination by a jury under proper instructions from the court as to the applicable principles of law, but in plain and indisputable cases the court may determine them as a matter of law." *Dodson* v. *Southern Railway Co.*, 55 *Ga. App.* 413 (8), 419 (190 S. E. 392). There being no statute in this State requiring one to stop, look, and listen before crossing a railroad track, it is not negligence per se where one fails to do so.

Applying the above-stated principles of law to the allegations of the petition in the present case, we think that a cause of action was set forth against the defendants and the court did not err in overruling the general demurrers. Undoubtedly acts of negligence were alleged against the defendants, and a jury question is presented as to whether or not the plaintiff was negligent in crossing the track of the defendant railway at the time and place mentioned, and whether or not by the exercise of ordinary care he could have avoided the consequences to himself of the defendants' negligence. It is alleged that the plaintiff was not aware of the approach of the train, that it was coasting at a dangerous rate of speed, more than forty miles an hour, not making the noise usually incidental to the operation of a train or locomotive, that the headlight of the locomotive did not shine upon the track but to the rear and westerly of the plaintiff, and that no warning of any kind was given him by the defendants. It can not be said as a matter of law, as contended by the plaintiff in error, that from the allegations of the petition the plaintiff was negligent or that by the exercise of ordinary care he could have avoided the consequences to himself of the defendants' negligence.

■ We think, however, that under the evidence it must be said as a matter of law that the proximate cause of his injury was the plaintiff's own negligence, and that by the exercise of ordinary care he could have avoided the consequences of the defendants' negligence. It appears that while the plaintiff stated that he did not know that the train "passed along there about that time," the time when he was injured, he testified: "I knew a train came into Columbus some time in the early part of the night. I mean by early part of the night between seven and nine when I went on this track." He further testified: "There is nothing wrong with my hearing that I know of. There is nothing wrong with my sight. From the time I left my automobile until I went to make the turn to go to number 1810 I did not look to see if the train was coming. . . I never looked down the track this way to see if the train was coming. . . It was around eight o'clock at night. . . The lights from the engine were deflected on the houses on the west. Had I looked back I could have seen the headlight. If I had looked back I could have seen the train. . . Before I was hurt and before I attempted to cross the track I was about four feet from the track. . . I think I was in a place of safety. If at that point I had looked back, I could have seen the headlight of a train rounding the curve for a distance, say, of fifty or sixty feet. I knew I was about to cross the railroad track. I knew the railroad track was a place of danger. I knew the rails were elevated. I knew there was danger there. I knew trains were likely to come along there at any time. . . I just went blindly on the track in front of the train."

. Construing the testimony most strongly against the plaintiff, although he stated that he did not know that a train would come along at eight o'clock he knew that the train might come along at any time between seven and nine o'clock that night, the interval in which he attempted to cross the track. Having such knowledge he failed to use his sense of sight to determine the close proximity of the train, and, instead, allowed himself to become absorbed or engrossed in the undertaking of crossing the track, and was oblivious to everything else. It is contended by counsel for the plaintiff that the elevated track and crossties, the ditch on the one side, and the darkness of the night, required great care and attention to pass over them without injury, and that his engrossment in

this respect palliates or justifies any failure on his part to contemplate the probability of an approaching train. We are cited to cases dealing with the principle contended for, but they relate to situations where the engrossment of the complainant was brought about by a dangerous, active force put in operation by the defendant, such as the running of a train from an opposite direction, which prompted the plaintiff, in the situation in which he was placed, to take action to safeguard himself therefrom, and in consequence of which he negligently subjected himself to another danger.

It could not reasonably be contended that the mere engrossment of one could palliate or justify his negligence. If a person, for example, were walking on the track of a railway and became engrossed in a near-by circus parade or the progress of an airplane, his conduct in allowing himself to be diverted from his duty of avoiding the danger of an approaching train would aggravate rather than extenuate negligence on his part. The plaintiff in the present case was not, by reason of the track, crossties, ditch, or the darkness of night required to act at all. He was admittedly in a place of safety before he attempted to cross the track. No act of the defendants prompted him to abandon it. What he did was self-instigated. His engrossment was in no wise contributed to by the defendants, and from it he can not justly seek any palliation or justification of any negligence on his part. By the exercise of ordinary care he could, in our opinion, have avoided the consequences of the defendants' negligence, and his own negligence was the proximate cause of his injury and damage. The court erred in overruling the general grounds of the motion for new trial.

■ A special ground of the motion for new trial assigns error on a portion of the charge of the court to the effect that it was not applicable to a "voluntary trespasser," as was the plaintiff in the present case. This contention is without merit, but as the case is being reversed on other grounds any detailed discussion is deemed unnecessary. It is further contended in this ground that certain language of the portion excepted to had the effect of instructing the jury that the defendants should be discharged from liability under the circumstances stated in the charge only in the event that the plaintiff could, by the exercise of ordinary care and diligence, have avoided the defendants' negligence, and that it had the effect

of eliminating from the jury's consideration the defense of the defendants, supported by evidence, that the injury of the plaintiff was due solely to his own fault and negligence. Inasmuch as in connection with the portion complained of and immediately thereafter the court charged the jury, "If you should find from the evidence that the plaintiff was negligent, and that such negligence was the proximate cause of his injury, then the plaintiff can not recover of the defendant. If you find that he received the injuries, gentlemen, but it was his negligence and not that of the defendant, he could not recover of the defendant," the objection is not well founded. *Judgment reversed. Felton, J., concurs.*

STEPHENS, P. J., dissenting. The plaintiff testified as follows: "As the railroad track crosses on 19th Street, it is on a deep curve and continues that curve, I would say to 18th Street. . . On the right, or west, is Railroad Avenue, a roadway. . . The roadway is adjacent to the track and is between the railroad and the negro houses on the west side. . . I was on my way to Mr. Crouch's. · It was very dark. Before I got directly in front of Mr. Crouch's I made an angle turn to my left. . . I then walked toward the track. It was very dark and it was rough. The crossing extended over the rails—over the dirt. . . As I started across the track I was looking directly down to the ground trying to make my way across the way without stumbling. I remember stepping on the track. Prior to that time I did not hear any locomotive engine bell rung, nor did I hear any locomotive whistle of any nature sound. I did not see any lights of any kind on that track as I stepped upon it and started across. . . As the train approaches this place where I attempted to cross, the lights of the locomotive shine on the negro houses to the right and on the west. On the night I was hurt I did not see the light. The track was very dark: As I started on the track I did not know a train was approaching. Nothing had happened, such as noise, lights, whistles, bells, or anything of that nature, to make me believe that a train was there, until the instant when I knew I was in danger. I was struck as I attempted to whirl off. . . I walked down four feet from the track. The train was going south in the same direction I was going. There is nothing wrong with my hearing that I know of. There is nothing wrong with my sight. . . I did not look to see if the train was coming. I had no occasion to look. I never

looked down the track this way to see if the train was coming. I did not hear a train. It was around eight o'clock at night. It was very dark. . . The lights from the engine were deflected on the houses on the west. . . Four feet from the track, I think I was in a place of safety. If at that point I had looked back I could have seen the headlight of a train rounding the curve for a distance I would say of fifty or sixty feet. I don't think I could have seen it north of 19th Street."

The statement of the plaintiff that he went "blindly on the track in front of the train" which he knew would likely come along, is no more than a statement that he went onto the track without looking when he knew that a train might come along. He did not say that he knew that the train was at the time approaching. He said that he did not know that a train was at the time approaching. He also stated that he did not know that a train passed along there about that time.

There was evidence that the train was coasting and came down upon the plaintiff noiselessly and that he did not hear it. From the testimony of the plaintiff and the fireman of the train it appears that where the plaintiff attempted to cross the tracks was a place where people were accustomed to cross the tracks of the railroad from Railroad Avenue over to their homes on the other side of the tracks, and that on the occasion of the plaintiff's injury the fireman knew of this custom. There was evidence that the train was running from 25 to 35 miles an hour when it approached. The place where the plaintiff was struck by the train was within the city limits of Columbus and within a populous community. While the engineer in his testimony does not seem to concede that people crossed the track at this place, stating he had never seen them cross there, it is clearly inferable that from the physical condition of the houses being on both sides, and it being a fact that people were accustomed to cross, as appears from the testimony of the fireman, the engineer knew or had reason to know that people had been and were in the habit of crossing at this place. The fireman knew this.

The jury was authorized to find that the plaintiff crossed the track at a well-used crossing in a populous locality, where people were in the habit of crossing with the knowledge of the operators of the defendants' train, and that the defendants were guilty of

negligence in the operation of the train at the time and place. *Georgia Railroad &c. Co.* v. *Cromer,* 106 *Ga.* 296 (31 S. E. 759) ; *Crawford* v. *Southern Ry. Co.,* 106 *Ga.* 870 (33 S. E. 826) ; and see my dissenting opinion in *Lassiter* v. *A. & W. P. R. Co.,* 61 *Ga. App.* 23 (5 S. E. 2d, 603). The jury was authorized to find that the negligence of the defendants was the proximate cause of the plaintiff's injuries, unless it appears as a matter of law from the evidence that the plaintiff's injuries were proximately caused by his own negligence and not by the negligence of the railroad company.

There is no law of stop, look, and listen prevailing in this State with regard to a place where people are accustomed to cross railroad tracks with the knowledge of the railroad company. Under the Georgia law, as I construe it, there is no duty as a matter of law resting upon a person crossing a railroad track, whether at a public crossing or at a private crossing, or at a crossing at which people are accustomed to cross with knowledge of the railroad company, to stop, look, and listen. This court held, in *Vaughn* v. *Louisville & Nashville R. Co.,* 53 *Ga. App.* 135 (185 S. E. 145), that "A person who, in walking across a railroad track along a pathway which is customarily used by the public at all hours of the day with knowledge of the railroad company, does not see and is not aware of an approaching train on the track because his back is turned towards the train and is oblivious of the movements of the train because the train is rolling and making very little noise and no warning is given by those operating the train of the train's approach, is not as a matter of law guilty of negligence which would bar a recovery in damages for injuries received by him by being hit by an approaching train," citing cases. In *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759 (3) (154 S. E. 718), where the injury was at a private way maintained by the railroad company, it was held: "It is true that the Supreme Court has held that the court might properly charge the jury that 'the precise thing which every person is bound to do before stepping upon a railroad track, is that which every prudent man would do under like circumstances,' and that '*if* prudent men would look and listen, so must every one else, or take the consequences so far as the consequences might have been avoided by that means.' . . But this is an entirely different thing from the court undertaking to decide for itself, and as a matter of law, what such a person law-

fully entering upon a public or private railroad crossing must or must not do in order to free himself of a guilt of a lack of ordinary care constituting the proximate cause of his injury. On the contrary, it has been many times ruled that such a question is one to be determined by the jury as a question of fact, rather than by the court as a matter of law. This long line of decisions, contrary to the rule in some jurisdictions, is to the effect that is can not be said *as a matter of law,* that the failure on the part of a person approaching and entering upon a railroad crossing, and unaware of the approach of a train, to stop, look, or listen, renders such person guilty of a lack of ordinary care such as would prevent recovery except in cases of wilful and wanton misconduct on the part of the defendant company," citing cases. See *W. & A. Railroad Co.* v. *Ferguson,* 113 *Ga.* 708 (supra).

The jury was authorized to find that the operators of the train did not blow any whistle or ring any bell, that the train was, in the nighttime, approaching the crossing which was in a city and at a populous section, at a speed of 25 to 35 miles an hour, that with the knowledge of the agents of the defendant railroad company operating the train it was customary for people to cross the tracks at this point, that the engineer failed to keep a lookout, and that these acts constituted negligence. The jury was also authorized to find that the plaintiff was unaware of the approach of the train, which approached noiselessly, and that in going upon the track, under the circumstances, without looking, the plaintiff was not guilty of negligence barring a recovery.

I can not concur in the proposition that it appears as a matter of law that the plaintiff's negligence was the proximate cause of his injury. I think it was a jury question whether the plaintiff's negligence or that of the defendants was the proximate cause of his injuries, or whether the doctrine of comparative negligence would operate in reduction of the amount of recovery.